Three cases are on the calendar this morning, our patent cases. One from District Court and two from the PTAB, if I may use an abbreviation. Our first case is Baltimore Aircoil Company v. SPX Cooling Technology 2017-13-42, Mr. McDowell. May it please the Court, my name is Jamie McDowell and I represent Baltimore Aircoil Company, also known as VAC. VAC asked this Court to vacate three of the District Court's decisions. First, the District Court's decision on summary judgment relating to the priority of claims 22 and 26 of the 782 patent. Second, the District Court's decision to allow the jury to decide an issue of claim scope in violation of O2 micro. And third, the District Court's decision at claim construction to improperly import a uniformity limitation into all asserted claims of the 685 patent. I'd like to start with the summary judgment issue relating to priority of claims 22 and 26 of the 782 patent. The District Court erred when it held that on summary judgment that VAC could not corroborate the sworn testimony of inventor Tom Carter relating to his conceptions of claims 22 and 26. But that's not corroboration, that's the inventor. Your Honor, conception is in the mind of the inventor. It is the brain that does the work for conception, not the hand. But it needs to be corroborated. It does, Your Honor. And in this very instance, what happened is the District Court confused conception and corroboration. And VAC offered extensive evidence corroborating Mr. Carter's sworn testimony as to his conception. I didn't understand your point with so much confusion. I thought it was a question of whether or not all the limitations in the claim needed to be corroborated. And there was corroboration for, say for hypothetically, four limitations in a claim. There was corroboration for three but not for the fourth. I understood your argument to be three out of four is enough. Your Honor. That's just a draw to the bottom line, right? Am I right? That's your argument? The argument is twofold. First, it is undisputed. In fact, SPX conceded that we had corroborated five of the six elements of the asserted claims. But even if this court were to hold otherwise, there was corroboration of that final element. Mr. Carter expressly did conversion calculations relating to the two types of fill in October of 2002 as part of his inventive process. And if I could point your honors to a particular document. There's a district court holding of the contrary, right? District court says that that limitation was not corroborated. You're correct, Your Honor. So this is a clear error issue? I mean, you're challenging the factual finding? Your Honor, I'm challenging the court setting forth the improper legal standard and confusing the issue of conception and corroboration in contravention of this court's. Improper legal standard that you're talking about. Your Honor, on summary judgment, the question is, could Mr. Carter's oral testimony be credible? All inferences are to be drawn in our favor. And so if a reasonable jury could consider Mr. Carter's testimony credible, then we should have one on summary judgment. And SPX concedes the fact that Mr. Carter's testimony could be credible. Let's assume his testimony is credible. That means you believe him. So he's corroborating himself. Corroboration normally means that, you know, I say something and there is some independent way to corroborate the truth of what I've said. Not a question of my veracity or my credibility, right? I agree with that, Your Honor. And we do have documents in this instance that do corroborate Mr. Carter's testimony. So then you're arguing that it was clearly erroneous for the district court to have concluded there was a failure of corroboration on this one limitation. I think it's twofold, Your Honor. First, I think the district court held the BAC to a conception standard for corroboration, finding that all elements must have been corroborated, and legally erroneous to ignore the evidence. And I don't think she ignored the evidence, Your Honor. I think what happened is she had the wrong standard, because if we look at some of her findings, some of her findings indicate that Mr. Carter's testimony is in fact credible or could be credible because this is a summary judgment standard. In fact, at her appendix page 141, she made findings that BAC already had a model on the market that used cross-flow. Credibility is subjective in a sense. Corroboration is objective in a sense. It's not whether the inventor is credible or maybe even credible in the expressions of his own thoughts on conception, but it's whether the inventor is corroborated with evidence outside of the head of the inventor. I agree with you, Your Honor. That is what corroboration is, that there is independent evidence in documents contemporaneous with the inventive process that would corroborate his testimony, and we provided that. We understand your point on that. Why don't you get to the jury verdict of non-infringement? The jury verdict on infringement, with respect to Issue 2, this relates to the issue of the district court sending an issue of claim scope to the jury. This is a little bit different than O2 Micro, Your Honor. This is an instance where the judge decided the issue with respect to the claim scope. At claim construction, she rejected SPX's claim construction that through meant throughout the entire. And we raised this again on summary judgment, and she found it was untenable to find that there could only be one type of airflow. We again raised this issue in motions in Lemonade. She did not decide the issue. But as we got to trial, SPX started picking away and started putting in more evidence and more argument, arguing the issue of claim scope. And after the court refused to provide our jury instruction, which came directly from her claim construction order rejecting SPX's argument, we asked the judge to tell the jury what the claim scope was. SPX got up in closing. And what did SPX tell the jury they should do? After discussing the issue of cross-flow fill, what did he invent on March 17th? He surely invented something. We're not denying that. But what is it that he invented? That is at appendix site 33256. SPX expressly asked the jury to decide the issue of claim scope as to what Mr. Carter invented. And when the jury was not given the rudder to navigate the currents of the river, it was left to its own devices to decide what the issue of claim scope was. And the confusing part, I think, for the jury here, Your Honor, is there was no factual dispute. The factual dispute of this issue bears on infringement. This does not bear on infringement, Your Honor. Claim construction, of course, always bears on infringement to some extent. My point is, what was the consequence of the failure of the judge to construe the claims or the judge letting the jury do it? What's the harm to you? Did you get invalidated? Did you find there was no infringement? The jury found there was no infringement, Your Honor, even though the factual dispute, if we look at page 22 of BAC's reply brief, there's a red box as part of the direct fill section. Nobody disputes that in the last 12% of that direct evaporative section, there is an airflow. This is on the 782 patent. This is the 782 patent, Your Honor. There is an airflow, and it moves generally upwardly through the direct section. That in and of itself, that fact is not disputed. So I can see how the district court may have gotten confused that I'm going to send something to the jury to decide, but there was nothing left to decide at that point, and we again tried to raise this issue on Jamal to the district court after trial, and she again denied our request. Why don't you tell us a little bit about the 685 patent issue? Your Honor, the 685 patent deals with densified coils, and the patent discusses what the prior art had. At appendix page 90, which is the 685 patent, column 2, lines 20 through 25, the 685 patent explains what the prior art had. Pull-down has typically been limited to no more than 2% of the return bend widths. Thus, packing has been limited to a density that was typically less than 1.0 and possibly slightly greater than 1.0 up to 1.02 through pull-down. However, such increased density was not controllably uniform or precise. The 685 patent picked up where the prior art left off. There are two sets of claims, one requiring a D to S ratio of greater than 1.02 and one requiring a D to S ratio of greater than 1.0. The 1.0 D to S ratio requires uniformity, just like is explained in the patent with respect to prior art. Which claim is that? The claims 1 and 13, Your Honor, relate to the D to S ratio greater than 1.02, and claim 20 relates to the D to S ratio greater than 1.0. There it uses a little bit different wording. It says D is greater than S, but that ratio is D to S greater than 1.02 or 1.0. And claim 20 is the one that requires the uniformity. But we also know from claim 12, which is dependent on claim 1. So I can make a calculation in claim 20 to get to 1.0? That's correct, Your Honor. And we also know from claim 12, which depends on claim 1, that the inventor added a uniformity limitation to claim 1 through a dependent claim. And this Court has held that the doctrine of claim differentiation is strongest when we're talking about a dependent claim adding a limitation to an independent claim. Now, Your Honor, it's what I'd like to point out here. Doesn't the spec talk about preferred embodiments being uniform? Your Honor, it certainly talks about preferred embodiments being uniform. But what I would ask this Court to do is look at it from a different perspective. Where does the patent not talk about uniformity? Let's look at the abstract. The abstract doesn't say anything about uniformity. In fact, it says substantially equally spaced apart circuits. That's not uniformity. Give me a line and a column, please. Your Honor, the abstract is at appendix page 81. Well, it's in the patent, right? That is correct. I'm looking at the patent. Let's have a line and a column and a line. Your Honor, the abstract, I don't believe, has line numbers. Or I would be happy to give you one. It is, if we look just at the first sentence of the abstract, appendix page 81. And where do we see it? It says, a heat exchanger coil assembly is made up of arrays of substantially equally spaced apart circuiting circuits. The entire abstract doesn't say the word uniform or uniformity. What does equally array mean? Substantially equally, Your Honor, I agree with you that that may be vague as to what that may constitute. But what it doesn't constitute is uniformity. Uniformity is the same without variance. What about the description of the invention having uniform density? What does that mean? Your Honor, there is one instance that SPX cites over and over in its brief as part of the field of the invention. And if we look at that, and that is at appendix 90, column 1, line 9, SPX is correct that BAC uses the word the invention and discusses uniformity. But that's where SPX stops. And if we look at the rest of that sentence. Then why is S used throughout the invention and not in it? The specification refers to S as being uniform with respect to one of the claims and maybe not with respect to the others. But yet the same letter S is used throughout in all the different figures. Your Honor. If it was less than uniform, if S means uniform for one claim, then shouldn't it be like S minus or S plus with respect to the other claims? I don't think so, Your Honor, because the uniformity refers to, remember we're talking about coils that are in three dimensions here. And so these serpentine tubes actually make more than one pass over each other. And if we have two circuits together, there could be four places where it may touch. Uniformity in the patent is talking about the S being the same along those four lines. In this sense, along those four places where the circuit touches, I'm sorry. The fact of uniformity, let's say we have an S at the top that is a half of an inch. And then we go down to the next place of contact and it's 0.45 inches. And then we go down to the next place where it touches and it's 0.42 inches. Those all are going to have a different S. They are certainly not uniform, but they are still going to meet that D to S ratio of greater than 1.02. Well, the problem for you is that the district court in the claim construction read in the claim that S and D are constants and have to be the same throughout the circuit, right? Yes, Your Honor. In fact, she found that not only does it have to be throughout the circuits, but throughout an 80-row coil, everything would have to be exactly the same. So the question for us is whether or not that is correct, that the patent requires S and D in Claim 1 to be the same, where your argument is that in Claim 20 you see that it's different. I think that's correct. Required in that case and not in this one. That is correct, Your Honor. Help me out a little bit. On the claim construction came down, there was a stipulation of non-infringement. What is it in the accused tubing that doesn't infringe on the claim construction the judge gave? Your Honor. What do they do? First of all, it's an industrial impossibility to do what the district court said. I'm just curious in my own mind, why is the accused product not infringing? Do they vary the size of S or D? Yes, Your Honor. The D remains constant in SPX's product, but the S does vary throughout the coil. And might change the spacing. Correct. And the other part of it is, if you think of these tubes that run across, the tubes will run across 10 or 20 feet. Think of that from an industrial standpoint. These are put together more from the standpoint of, let's say we take paper clips apart. Counsel, I think you've exceeded your time, so why don't we hear from the other side. We'll give you two minutes of rebuttal time afterwards. Thank you, Your Honor. Mr. Anderson. Thank you, Your Honor. May it please the court. BAC raised three issues on appeal. With regard to the 782 patent, they raised a priority dispute and jury instruction dispute. And with regard to the 685 patent, they raised a claim construction dispute. I'll begin with the priority dispute. The district court had properly determined that BAC could not meet its burden of proving that Mr. Carter had invented claims 22 and 26 of the 782 patent prior to the July 12, 2004 filing date. BAC had alleged that it conceived of all claims on March 17, 2003, but it failed to identify any documents showing a complete conception of all limitations of claims 22 and 26 at any time prior to the filing date. Even as of September 2006, six months after the alleged conception, BAC's own correspondence between its patent counsel and its patent draftsman included only descriptions of the counterflow embodiment. There was no reference to the crossflow embodiment described in claims 22 and 26 six months after the alleged conception. The declaration and the documents that BAC relied on in summary judgment merely showed that Mr. Carter had used crossflow fill and some other unidentified context and designs, not that he had conceived of the crosscurrent airflow design of claims 22 and 26. BAC actually had six chances, through Mr. Carter's deposition, his declaration, Mr. Trotta's deposition, Mr. Trotta's declaration, the expert report of Mr. Welch, and then the expert deposition of Mr. Welch, to try to link the documents that it cited in its first summary judgment to the claims. It failed to do so. In fact, the declarations that BAC relied on in summary judgment... You think that's all that was necessary for him to make some sort of verbal link at that point? No, Your Honor, we wouldn't say that. In fact, there's no link between those documents. There needs to be more that explains, as we had explained in our briefing. Mr. Welch, BAC's own expert, told us that merely referring to crossflow fill is not enough. Crossflow fill does not get you crossflow airflow direction. You need to know the context in which the crossflow fill is applied. Where are the inlets? Where are the outlets? Where are the baffles, for example, the walls surrounding the unit? And where's the fan? None of the information that BAC provided gives this context. In fact, if you were to look at BAC's IDC prototype, which is cited at Appendix 4790, even if you had put crossflow fill into that IDC prototype, you would not get crossflow airflow, because as Mr. Carter explained at trial, the inlet is at the bottom, the outlet is at the top, and the walls are blocked off, so you can't have air flowing from side to side. Are you saying there was no conception or no corroboration? Both. In this case, there is... BAC on summary judgment relied solely on its declarations, which went to the wrong point. They went to crossflow fill, not to crossflow air direction. So BAC failed step one about conception. It failed to actually show that it conceived of the limitations, the crossflow airflow limitations of Claims 22 and 26. Beyond that... I'm not sure about that. Mr. Carter testified about investigating counterflow fill in an IDC prototype, and the inventions that he would have looked at, and he described the relationship between crossflow and counterflow fill. Is that not conception? I'm not saying it's corroboration, but isn't that conception? No, Your Honor, it's actually not, and BAC's own expert explained why not. For example, the use of crossflow fill in and of itself does not give you crossflow airflow. And Mr. Welch, for example, when describing BAC's... Mr. Welch being BAC's expert, describing, for example, the calculation, the fill comparison that Plaintiff's counsel referred to in his argument, Mr. Welch specifically said the documents that BAC relied on in summary judgment, including the fill comparison, the table that's cited in BAC's brief, don't actually show that BAC had used or even contemplated using crossflow fill in its designs. The appendix site for that is at 6547-8. But BAC's own expert explained the evidence that BAC was relying on didn't actually show conception and couldn't corroborate conception. And his testimony and his deposition explained that the statement that BAC relies on, that I knew my inventions can employ either type of fill, went to the wrong issue. Mr. Carter was explaining... Is corroboration a question of fact? Well, corroboration is a question of... Sufficiency of corroboration is a question of fact, yes, Your Honor. But to the extent that in this particular instance, BAC failed to provide any corroboration of the crossflow limitation. BAC only provided references to crossflow documents without ever explaining how the crossflow fill in those other contexts were used. So if I have an invention, as Judge Clevenger had noted, if I have an invention that consists of elements A, B, C, and D, it's not enough for me to say, in one context, I thought of elements B, C, and D. In an entirely different context, I thought of element A. What BAC never did is explain, even to the extent Mr. Carter had thought of using crossflow fill, in what context it was. So the fact that Mr. Carter had used crossflow fill in some entirely different context does not establish that he thought of using crossflow airflow in the context of Claims 22.6. But the jury verdict of non-infringement and the argument that the jury was allowed to construe the claims. Well, I will address that point, Your Honor. The jury had found that Claim 16 was not infringed, even though the district court had told the jury that the only issue that needed to be decided for Claim 16 was whether air flowed generally upwardly through the direct evaporative section. And the district court read to the jury, verbatim, BAC's proposed construction of the term moving air generally upwardly through the direct evaporative section. BAC now claims that the court aired because it didn't grant BAC's related request a year and a half after Markman to further construe BAC's own construction and to work through and to add a construction of the term comprising. But contrary to BAC's arguments, there was no claim construction dispute, a trial that required the court to weigh in and to provide further construction. SPX never argued that Claims 16 and 22 are mutually exclusive or that air could not flow both up and across. What SPX's expert testified to is that air does not flow generally upwardly because it flows across and down the direct evaporative section. And he explained that generally downwardly is the opposite of generally upwardly. BAC has not, nor can it argue on appeal, that you can be both generally upwardly and generally downwardly in the direct section. BAC's counsel told the jury during closing argument that the issue it needed to decide was whether air went up or air went down and that there was evidence supporting both conclusions. The site for that is 33207, 33204-6. Further, BAC's own expert repeatedly admitted that up is not down. What BAC is actually seeking to do on appeal is to rewrite its own construction to moving air in a generally upward direction through some or a portion of the direct evaporative section. But that's not what the claim says. In fact, BAC itself said that the word generally means primarily. Although it later attempted to back off of that definition and say it was only an alternative construction, BAC had proposed that. With regard to BAC's assertion that the jury should have found infringement based on the last four inches, that's also incorrect because the evidence at trial that was offered showed that air consistently left the fill section lower than the height at which it entered, indicating a downward flow. The sites for that are at 32755-57. There's a special appendix 1-2, 327-32-8, and 32746-58. Moreover, the district court or the jury could have properly concluded that the last four inches were not actually part of the direct evaporative section. The first few inches and the last four inches are louvers and mist eliminators, which are designed to actually keep water in the system. Why don't you tell us about the 685 patent? Of course, Your Honor. S and D. With regard to the 685 patent, Your Honor, the district court properly construed the limitation S is the spacing between each adjacent circuit to mean that S is the space between every adjacent circuit in the direction of stacking at every point between those adjacent circuits. BAC sought to rewrite the claim such that an array of 20 coils are suited to 26. What is it that requires S to be constant? Here is the plain language, Your Honor. For example, we look at this and we see that the claims don't say some circuits have a spacing S. They say each circuit has the spacing S. There's one value of S. It's referred to as the value of S, not A, but what makes S a constant value? Well, in the claims, there's actually only one value, and that value is referred to as each. This is actually very similar to the case that the court examined in Cat Tech v. Tube Master, where the plaintiff had argued in prosecution that each gap between plates had to have a spacing that was less than the smallest particle. The court there found that the plaintiff could not later argue that there was only one gap between the adjacent plates needed to meet the spacing limitation. This is an almost identical situation here, but here it's actually even stronger because it's the plain language itself that says each plain has to have the spacing S. Why isn't S simply defining that that's what it is? S is the space between each circuit. Why does that necessarily mean that the S has to be the same between every circuit? Well, first of all, Your Honor, the plain language says the spacing S, indicating one spacing. There's one value of S that's referred to as the spacing S, and it's for each. Further, the specification repeatedly refers to not just embodiments, but it refers to the invention as being uniformly densified. Column 1, lines 7 through 8 says the invention relates to a heat exchanger having uniformly densified structure. The patent says its goal is to increase density uniformly so that all circuits have consistent functionality. What about claim 20? Claim 20 does... Claim differentiation argument? Well, claim differentiation actually doesn't necessarily apply to claim between claims 20 and 1 because there are other differences. So as this Court has held in the past, not only is claim differentiation not a hard and fast rule, but it doesn't necessarily apply, it doesn't require that each limitation between different claims be different. It only requires one limitation to be different. As Mr. McDowell pointed out in his argument, there's a spacing difference between those two claims. Moreover, there's actually a slight difference in the language whereas claims 1 and 13 say S is the spacing between each adjacent circuit. In the context of claim 20, it actually refers to a uniform spacing S between the circuits. But to the extent that... Getting back to the specification, the patent says the goal is to increase the density uniformly so that all circuits have consistent functionality. It says that there's a particular need for doing it in a uniform way. That sounds like a preferred embodiment to me. There's a need for a heat exchanger where you can increase bundle density because the patent recognizes that increasing bundle density is a good idea and there have been problems in the prior order. So in the summary of the invention, the second paragraph would seem to me there's a need for a design that can increase bundle density which you could do non-uniformly, right? You can increase bundle density uniformly. And then it goes on to say there's a particular need for a heat exchanger that increases it uniformly. And then the patent also goes on to say that this need and the need of the invention that it's just described are met by the present invention meets those needs to increase it uniformly. So where it discusses there's a need in the system... Both needs are met. And both needs are met by a uniform system. Both needs are met without requiring uniformity. You've got uniformity in Claim 20, so if that's a dependent claim that that's getting that job done, but if Claim 1... I mean, I think your argument really hinges on the word the preceding the S and the D, right? It is primary... Well, it starts, of course, it's just as Phillips indicates, you start with a plain ordinary meaning of the claims. Here the claims say S is V-spacing. If it said A instead of the, you wouldn't have an argument. I think we still would, Your Honor. A lesser argument. It would be slightly weaker, but it would still be the same argument. For example, in CATTEC, there was A spacing S. It wasn't the spacing S. And the court still found that the spacing requirement was required across all of the circuits. And here, in this particular case, what the patent talks about is this is... We're talking about increases in density on the order of 1%. And the patent in column 11 specifically says that the overall goal of this patent is felt when you talk about the cumulative effect over many circuits. So it's not sufficient to just say between one circuit I densify. I need to actually have that effect and that impact over multiple circuits so that I can either have a smaller housing or I can add more circuits at the end. So what the patent is talking about is not just having a very localized density increase. It's having an entire tube bundle density increase. Right, but you could still achieve some of those same results if you were non-uniform, but not non-uniform in an aggressive way. And uniformity requires the space to be exactly the same or, as the patent recognizes, substantially exactly the same because it can't be exactly the same in the real world, right? The measurements. I mean, the stuff is big and... To the extent that there are spacing differences, Your Honor, we would think that those spacing differences would need to be very small compared to, as we said, there's looking at a 1% to 2% difference. It's the difference between infringement and non-infringement. Right, but if the claims are requiring uniformity, you can avoid infringement by coming off uniformity by a tiny bit, right? Which is presumably what you've done. Which the client has done, presumably, okay? So many of the same benefits that the patent is trying to achieve can be, I would assume, in the real world, can be achieved in a non-uniform environment. Some of those potential benefits could be achieved... I'm just responding to your argument, you know, that all these benefits flow from uniformity. Some of the benefits could be achieved by uniformity, but all of the benefits can be achieved by a system which is uniform. If you have a system which is not... If you draw your claim uniformly, you live or die by uniformity, and, as I say, it isn't very hard to avoid uniformity in the real world. Well, to the extent that there's a dispute over uniformity... The court's claim construction doesn't actually have the words uniform. It has S is thus spacing. So to the extent that there's a dispute as to uniformity... Well, the district court's interpretation is that there's no variance, that S is constant throughout, right? Now, to the extent that there's a doctrine of equivalence or an infringement issue, BAC stipulated to non-infringement, so no one ever got to the issue of how much variation can there be because BAC stipulated to non-infringement. So to the extent the record is barren as to what level of difference you could have, and I apologize for running out of time. I gave away a DOE argument. There's nothing I can do about it. You can do about that. I mean, you're happy. I beg your pardon, Your Honor? The infringement issue is not on grounds. I'm just trying to see what... Testing your argument that you said, well, basically, you know, to achieve the advantages that the patent wants to get, and I just doubt that. Well, there's an issue also of consistent functionality. So if you also have tubes that have inconsistent properties, and so if you have inconsistent spacing, inconsistent diameter, you now have a system where tubes do not have consistent properties, which is, again, one of the functions of the claims is you want every tube to have... Depending on how much variance you have. I beg your pardon, Your Honor? Depending on how much variance you have, and what the size of the whole thing is, and the fluid moving in the rest. Sure. In the instance of BAC's construction, which is adjacent circuits have us spacing between them, what BAC's proposed construction actually is asking the court to do is just to look at two circuits and ignore everything else. Thank you, counsel. As you can see, your time has expired. Thank you, Your Honor. We have your case. Mr. McDowell has two minutes for rebuttal. Thank you, Your Honor. Your Honor, I'd first like to address the argument by my friend with respect to conception on Issue 1, the priority. Now, my friend stated that Mr. Carter never made the connection between cross-flow fill and moving air generally across the direct evaporative section. That's simply incorrect, Your Honor. If we look at Appendix Site 22137, Paragraph 18, Mr. Carter states as part of his declaration, the cross-flow fill would direct air to flow at least across the direct evaporative section. Mr. Trotta, the assistant to Mr. Carter, submitted a declaration as well in support of our opposition. Mr. Trotta states at Appendix Site 22150, Paragraph 5, the cross-flow fill would direct air to flow at least across the direct evaporative section. The link was there. And again, this is summary judgment. All inferences should be drawn in BAC's favor. The concept of corroboration and whether it requires every element, this Court just a month ago reaffirmed the Fleming decision, the intellectual venture decision, again stating, Raytheon is correct that corroborating evidence need not disclose each and every aspect of the claimed invention, citing both Cooper and Fleming. And that's at 2018 Westlaw 1598724 at page 5. Unpublished decision, but again, this Court has always found that very... But the corroborating evidence must encompass all claim limitations. It need not address each specific one, but overall the corroborating evidence has to encompass all claim limitations. I think the corroborating evidence, Your Honor, only has to determine, is the inventor testimony credible? The conception is where all the elements come in. If we had a corroboration... Did the inventor possess the invention at the time of the corroboration? Your Honor, the inventor... The conception is in the formation of the mind of the inventor. So the invention means encompass all the claim limitations. Correct, Your Honor. And that's why the conception usually boils down to an inventor testifying, because it's something that happened in his mind. The corroboration requirement is there to determine, is that inventor's testimony credible? And there's a difference between necessity of corroboration and sufficiency of corroboration. Thank you, counsel. Your time is up. We will take the case under submission. Thank you, Your Honor.